United States District Court
Southern District of Texas
**ENTERED**
August 14, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Brittani Beasley, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:25-cv-06074 |
| James Harden Jr., 13 Strikes LLC, Thirteens Hospitality Group, LLC, | § | |
| *Defendant*. | § | |

**MEMORANDUM, RECOMMENDATION, AND ORDER**

Multiple motions are pending in this employment dispute, which was referred to the undersigned judge. *See* Dkt. 25. Plaintiff Brittani Beasley filed a motion asking to consolidate this case with her first-filed and then-pending suit. Dkt. 20. Because that first suit has ended, the motion is denied as moot.

Beasley also filed two motions for default judgment. One is against Defendant Thirteens Hospitality Group, LLC (“Thirteens Hospitality”). Dkt. 28 (motion against Thirteens Hospitality); Dkt. 31 (amended version against Thirteens Hospitality). Because Beasley withdrew her motion against Thirteens Hospitality, *see* Dkt. 43, it should be denied as moot. Her related requests to amend the motion for default judgment (Dkt. 38) and for a hearing, Dkt. 29; *see also* Dkt. 36 (amended version), are also denied as moot.

Beasley also filed a motion for default judgment against Defendant James Harden Jr. *See* Dkt. 15 (motion against Harden); Dkt. 21 (Harden's response); Dkt. 22 (Beasley's reply); Dkt. 23 (amended reply). As explained below, because Harden has appeared and defended in this case, Beasley's motion (Dkt. 15) should be denied, and her motion for leave to amend the motion for default judgment (Dkt. 39) is likewise denied. No hearing is necessary, so Beasley's request for a hearing on the motion against Harden (Dkts. 30, 35) is denied.

In addition, Harden and Defendant 13 Strikes LLC filed a motion to dismiss all claims against Fed. R. Civ. P. 12(b)(6), Dkt. 14, to which Beasley responded, Dkt. 18. After carefully considering the parties' briefs, the complaint, and the applicable law, it is recommended that the motion be granted, and that all claims against Harden and 13 Strikes be dismissed. Because Beasley's allegations against all three defendants are identical, it is recommended that her claims against Thirteens Hospitality also be dismissed.

In two recent filings, Beasley also embedded a request for leave to amend. *See* Dkt. 43 at 2; Dkt. 45 at 2. Harden and 13 Strikes oppose that request, Dkt. 46. For the reasons detailed below, Beasley's request for leave to amend is denied. Her additional motion to consolidate this case (Dkt. 20) with her earlier-filed and related suit that has been resolved is denied as moot. And

given the recommended disposition of this case, Beasley's further motion to stay her Rule 26 obligations (Dkt. 37) is denied as moot.

**Background**

This is Beasley's second case alleging that she was subjected to unlawful retaliation and racial discrimination while working for a restaurant. In the first case—*Beasley I*—the undersigned issued a series of opinions,[1] which the district judge ultimately adopted, concluding that Beasley's claims were barred. *See* Final Judgment, *Beasley v. Harden*, No. 4:24-cv-04912 (S.D. Tex. July 28, 2026) (Lake, J.) (hereinafter *Beasley I*).

Beasley's live pleading in this case, filed before *Beasley I* concluded, omits certain previous allegations of which this Court takes judicial notice alongside the rulings in *Beasley I*. As detailed in that case, Beasley, who is African American, started working in July 2021 as a host at "Thirteen by James Harden," a restaurant operated by 13 Strikes. *See Beasley v. Thirteen Strikes, LLC*, 2025 WL 3245070, at *1 (S.D. Tex. Oct 20, 2025), *adopted by* 2025 WL 606697 (S.D. Tex. Feb. 25, 2025). In about a year, Beasley was promoted to lead host, trainer, and supervisor and, in February 2023, was promoted to Assistant General Manager before serving as Interim General Manager. *See id.* Among other things, Beasley asserted that, in March 2023, the

[1] The undersigned judge is the same magistrate judge who was referred all pre-trial matters in *Beasley I*.

restaurant offered her a General Manager position, which she filled on an interim basis, but later refused to give her the position permanently because of her race. *See Beasley v. 13 Strikes, LLC*, 2026 WL 2177419, at *1-2 (S.D. Tex. July 13, 2026), *adopted by* 2026 WL 2175597 (S.D. Tex. July 28, 2026).

Beasley also sued Harden in *Beasley I*, but her claims against him under Title VII of the Civil Rights Act of 1964 were dismissed because the statute does not apply to individuals. *See Beasley*, 2025 WL 607387, at *2. As for her claims against 13 Strikes, the court rejected all but one claim at the motion-to-dismiss stage, holding, among other things, that (1) Beasley did not exhaust administrative remedies for her Title VII wage discrimination, hostile work environment, and retaliation claims; (2) 13 Strikes's alleged failure to disclose Beasley's job responsibilities did not state a cognizable claim; (3) the negligence and fraud claims asserting that supervisors misrepresented Beasley's job description and denied a promised promotion were preempted by Title VII and inadequately pleaded; and (3) 13 Strikes's statements during the pre-suit EEOC proceeding are absolutely privileged, which defeated Beasley's defamation claim. *See Beasley v. Thirteen Strikes, LLC*, 2025 WL 3245070 (S.D. Tex. Oct. 20, 2025); *adopted by* 2025 WL 344443 (November 20, 2025). The only remaining claim—asserting that 13 Strikes violated Title VII by denying Beasley a promotion to General Manager—failed on summary

judgment. *See Beasley v. 13 Strikes, LLC*, 2026 WL 2177419 (S.D. Tex. July 13, 2026), *adopted by* 2026 WL 2175597 (S.D. Tex. July 28, 2026).

Beasley's factual allegations in this second case overlap with *Beasley I*. She has sued Harden, 13 Strikes, and Thirteens Hospitality—which records addressed below reflect is not an existing legal entity, *see* Dkt. 31-1 at 11-12 (response from Texas Secretary of State noting no records of any "active or inactive entity by this name"). Like her first case, Beasley alleges that she was extended the General Manager position but then had it wrongfully rescinded. *See* Dkt. 1 at 8. Instead of invoking Title VII, however, her claims assert that "Defendants" collectively violated 42 U.S.C. § 1981 in various respects.

First, Beasley claims that she was underpaid while serving as Interim General Manager, when compared to the previous General Manager's wage. *See id.* at 10 ¶ 1. She alleges that Heather Grimm, a Caucasian woman who worked an administrator, received a bonus and a higher hourly rate. *See id.* ¶ 3. Beasley also asserts that 13 Strikes "fraudulently misrepresented" that she was not entitled to overtime for working as Interim General Manager, even though she received overtime "in November 2022 for events outside her supervisor role ...." *See id.* at 10. And she contends that 13 Strikes failed to reimburse her for company expenses that she fronted. *See id.* at 10-11.

Second, she claims that "Defendants" retaliated against her for complaining about wage-discrimination. *See id.* at 11. Beasley asserts that

she was demoted and denied backpay after lodging a complaint. *See id.* at 10 ¶ 1. She also complained to unspecified personnel about their handling of certain disputes and about other employees' conduct. *See id.* at 11 ¶ 2 (email complaining about "the company's communicative practice"), ¶ 3 (complaining about Leza Narducci contacting her "unnecessarily").

Third, Beasley contends that she was harassed. She states that, during a June 5, 2023 call, supervisors "allow[ed]" a previous manager, Sandra Lopez, to accuse Beasley of "charging a fee." *Id.* at 11 ¶ 2. She told "Defendants" that she was "'uneasy' about the company's communicative practice" but nothing was done. *Id.* Beasley also alleges that the "Company supported harassment and retaliation from" a Caucasian employee, Leza Narducci. *Id.* at 11 ¶ 3. In one incident, Beasley accuses Narducci of contacting her "unnecessarily" and falsely claiming that other employees had worked one of Beasley's events but were not paid. *Id.* In another, Narducci requested that Beasley submit documents to her, even though Beasley had already provided the documents to her own supervisor. *See id.* at 12 ¶ 4. Unrelatedly, Beasley accuses Defendants of issuing her a personal improvement plan with scheduling, location, title, and timekeeping requirements that did not align with her "representation agreement ...." *Id.* at 12 ¶ 5.

Fourth and relatedly, Beasley contends that Defendants breached a "representation agreement" by preventing her from performing certain duties

and requiring her to perform others. *See id.* at 12-13. She lists various duties and responsibilities of the hosting event coordinator job but does not identify a specific "representation agreement." *See id.*

Finally, Beasley raises a hostile work environment claim. *Id.* at 13-14. That claim, however, merely incorporates the allegations above. *See id.*

Beasley filed her complaint on December 16, 2025. Dkt. 1. Because this Court granted Beasley's request for leave to proceed *in forma pauperis*, Dkt. 6, she provided the summons and complaint to the U.S. Marshals to effectuate service. Harden's counsel requested a waiver of service on Harden's behalf, Dkt. 21-1, but Beasley ignored that request, stating that Harden would be served in person and publicly during a basketball game at the Toyota Center on February 11, 2026. *See* Dkt. 21-1; *see also* Dkt. 12 at 1 (stating this method of service). Harden's counsel then accepted service by email on January 23, 2026, on Harden's behalf. Dkt. 12 at 1.

On February 16, 2026, Harden and 13 Strikes moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6). Dkt. 14. Beasley responded to that motion, Dkt. 18, and filed a motion to consolidate this case with *Beasley I*, which was still ongoing, Dkt. 20.

In the interim, Beasley filed a motion for default judgment against Harden, Dkt. 15, to which Harden responded, Dkt. 21, and Beasley replied, Dkt. 22; *see also* Dkt. 23 (amended reply). She requested a hearing on her

motion. Dkt. 30; *see also* Dkt. 35 (corrected version). Beasley later filed a motion requesting leave to amend her motion for default judgment against Harden. Dkt. 39. Although she later sought to withdraw the motion for default judgment, Dkt. 43, she changed her mind—as reflected by her notice that both withdrew that withdrawal and embedded a new request for leave to amend, Dkt. 44. Harden and 13 Strikes responded by opposing the request for leave to amend. Dkt. 46.

Separately, Beasley filed a motion for default judgment against Thirteens Hospitality, Dkt. 28; *see also* Dkt. 31 (amended version), a motion requesting a hearing on the issue, Dkt. 29 (original motion for hearing); Dkt. 36 (amended version), and a motion for leave to amend the motion for default judgment, Dkt. 38. The return of service indicates that the complaint and summons were sent by certified mail to the Texas Secretary of State. Dkt. 27. But Beasley's submission reflects that the Secretary of State has no records of any entity named Thirteens Hospitality. *See* Dkt. 31-1 at 11. 13 Strikes and Harden filed a response explaining that Thirteens Hospitality is not a legal entity. Dkt. 40.

Although Beasley filed a reply supporting her requested relief against Thirteens Hospitality, Dkt. 41; *see also* Dkt. 42 (amended version), she later withdrew the request for default judgment against that defendant and asked for leave to amend. *See* Dkt. 45. Amidst all those filings, Beasley also filed a

motion requesting a stay of her disclosure obligations under Fed. R. Civ. P. 26(a). Dkt. 37. All motions are ripe for resolution.

## Analysis

### I. Beasley's motion for consolidation is moot.

Beasley filed a motion asking to consolidate this case with *Beasley I*. Dkt. 20. She filed the same motion in *Beasley I*, which she later withdrew, *see Beasley I*, Dkt. 118 (motion to consolidate); Dkt. 123 (withdrawal); Dkt. 124 at 11 (ordering withdrawal). Although Beasley has not filed a notice of withdrawal in this case, the entry of final judgment in *Beasley I* moots any request to consolidate her two cases. Her motion to consolidate is therefore denied as moot.

### II. Beasley is not entitled to default judgment against Harden.

Beasley also filed multiple motions for default judgment. Although she initially sought default judgment against Thirteens Hospitality, Dkt. 28 (original motion); Dkt. 31 (amended version), she has withdrawn that request, Dkt. 45, rendering it moot, along with her motion for a hearing on that request, *see* Dkt. 29 (motion for hearing); *see also* Dkt. 31 (amended version). Beasley also filed a motion for default judgment against Harden, even though he had already appeared and joined 13 Strikes's motion to dismiss all claims. *See*

Dkt. 15 (February 27, 2026 motion for default judgment against Harden);[2] *see also* Dkt. 14 (February 16, 2026 motion to dismiss). Beasley's request for relief against Harden is procedurally improper and should be denied.

**A. Legal standard for default judgment**

Default proceedings involve three steps: default, entry of default, and default judgment. *See* Fed. R. Civ. P. 55. A default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* Fed. R. Civ. P. 55(a). "An entry of default is what the clerk enters when a plaintiff establishes the default by affidavit or otherwise pursuant to Rule 55(a)." *Axcess Glob. Scis., LLC v. Ozcan Grp., Inc.*, 2024 WL 3259700, at *1 (S.D. Tex. July 1, 2024). A default judgment can then be entered if a plaintiff applies for such relief under Rule 55(b)(2). *See id.*

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States ex rel. M-CO Constr. Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). District courts have discretion to determine whether entry of default judgment is warranted. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). But the Fifth Circuit instructs that "[d]efault judgments are a drastic remedy, not favored

[2] Beasley later filed a motion to withdraw the request for default against Harden, Dkt. 43, but then withdrew the motion to withdraw, Dkt. 44.

by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A plaintiff "is not entitled to a default judgment as a matter of right," even if the defendant "is technically in default." *Lewis*, 236 F.3d at 767 (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)).

**B. Default judgment is procedurally improper.**

For multiple reasons, Beasley is not entitled to default judgment. First, Beasley never properly sought entry of default under Fed. R. Civ. P. 55 before moving for default judgment. "Without a prior entry of default, a party has no basis to seek a default judgment." *Coleman v. FEMA*, 2019 WL 2124897, at *1 (N.D. Tex. Apr. 9, 2019).

Second, Harden has appeared and defended against Beasley's claims. Default judgment is characterized as "a penalty against a party for failure to appear or otherwise perform a procedurally required act." *Fodge v. Trustmark Nat'l Bank*, 945 F.3d 880, 882 n.1 (5th Cir. 2019) (quotation omitted). Harden, however, did not fail to appear; he has filed a motion to dismiss all claims. *See Sun Bank*, 874 F.2d at 277 ("The filing of a motion to dismiss is normally considered to constitute an appearance."). Beasley disputes the timeliness of Harden's appearance. *See* Dkt. 23 at 2-3 (alleging that Harden failed to timely file a responsive pleading). That is irrelevant because his appearance even before Beasley moved for default judgment forecloses her requested relief. *See,*

*e.g.*, *Washington v. M. Hanna Constr. Inc.*, 299 F. App'x 399, 400 (5th Cir. 2008) (per curiam) (affirming denial of default judgment, even though defendant allegedly filed an untimely motion to dismiss, because defendant "appeared in the suit by filing a motion to dismiss" and did so "before Plaintiff moved for default"). This Court should deny Beasley's motion for default judgment. Beasley's related motions for leave to amend (Dkt. 39) the motion for default judgment and for a hearing on default judgment (Dkts. 30, 35) are denied.

## III. Beasley failed to state plausible claims under 42 U.S.C. § 1981.

Regarding the merits, Harden and 13 Strikes argue that Beasley has not stated any plausible basis for relief under 42 U.S.C. § 1981, whether for wage discrimination, retaliation, "breach of a representation agreement," or hostile work environment. *See* Dkt. 14. In response, Beasley cites various portions of her complaint. *See* Dkt. 18. But she has not pleaded facts plausibly indicating that any of the actions allegedly taken by her employer or fellow employees or any of the complaints she raised had anything to do with her race. That is fatal to her claims. And because the same deficiency forecloses relief against Harden, 13 Strikes, and Thirteens Hospitality, all claims should be dismissed.

### A. Standard of review under Fed. R. Civ. P. 12(b)(6)

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (footnotes omitted) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

Pro se pleadings are liberally construed. *Butler v. S. Porter*, 999 F.3d 287, 292 (5th Cir. 2021) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam)). But "regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Prescott v. UTMB Galveston Tex.*, 73 F.4th 315, 318 (5th Cir. 2023)

(quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam) ("[P]ro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.").

**B. Beasley has not adequately alleged any claims against Harden or 13 Strikes.**

Section 1981 states, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. In the employment context, the elements of Section 1981 claims are identical to those under Title VII. *See Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001) (making this observation).

As explained below, Beasley has not pleaded enough facts to plausibly state a basis for relief under Section 1981, whether for wage discrimination, retaliation, or hostile work environment. There is no such thing as "breach of a representation agreement" under Section 1981, nor has Beasley adequately pleaded that she was denied any contractual benefit because of her race. Her claims against Harden and 13 Strikes should be dismissed.

1. <u>The complaint fails to state a plausible wage discrimination claim.</u>

Regarding the wage discrimination claim, Harden and 13 Strikes contend that Beasley has not identified a similarly situated non-African American employee who received higher pay. *See* Dkt. 14 at 16. To make a prima facie case of wage discrimination under Section 1981, "a plaintiff must show (1) that [s]he was a member of a protected class; (2) that [s]he was paid less than a non-member; and (3) that [her] his circumstances are 'nearly identical' to those of the better-paid non-member." *Mengistu v. Miss. Valley State Univ.*, 716 F. App'x 331, 333-34 (5th Cir. 2018) (per curiam) (quotation omitted) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522-23 (5th Cir. 2008)). Although a plaintiff does "not have to submit *evidence* to establish a prima facie case" at the Rule 12(b)(6) stage, she must "*plead* sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible." *Chhim*, 836 F.3d at 470 (emphasis added) (discussing Title VII, citing *Raj v. La. State Univ.*, 714 F.3d 32, 331 (5th Cir. 2013)).

Beasley cites her allegation that she was paid $20 per hour while working as interim manager whereas another employee, Heather Grimm, "was making $29 an hour ...." Dkt. 18 at 4; *see also* Dkt. 1 at 10. But as Harden and 13 Strikes observe, the complaint reflects that Grimm and Beasley were not similarly situated. Unlike Beasley, Grimm worked in administration. *See*

Dkt. 1 at 10. Although Beasley insists that she had greater responsibilities than Grimm, *see* Dkt. 18 at 4, nothing in the complaint bears this out. Nor does the complaint suggest that Grimm was "subordinate" to Beasley. *See id.* There is no indication that Beasley's circumstances were "nearly identical" to Grimm's, as the law requires. *See Mengistu*, 716 F. App'x at 333-34. Her conclusory assertions in response to the motion to dismiss do not suffice.

Beasley also notes that the "previous general manager" made a higher wage, $59 per hour. *See* Dkt. 18 at 4; *see also* Dkt. 1 at 10. Yet Beasley was serving as manager only in a temporary capacity. Moreover, there is no indication that the previous manager was outside Beasley's protected class. Likewise, Beasley has not plausibly alleged she was denied reimbursement for expenses, back pay, or differential pay that was given to any similarly situated employee. Her wage discrimination claim therefore fails.

2. <u>Beasley's failure to adequately allege protected activity forecloses her retaliation claim.</u>

Harden and 13 Strikes are also correct that the Section 1981 retaliation claim is deficient. *See* Dkt. 14 at 13-14. "A retaliation plaintiff must prove by a preponderance of the evidence that: (i) he engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link exists between the protected activity and the adverse employment action."

*Yarbrough v. SlashSupport, Inc.*, 152 F.4th 658, 667 (5th Cir. 2025) (quotation omitted). These requirements were not adequately alleged.

According to her pleading, Beasley made various "complaints" to unspecified personnel about "wage discrimination ...." Dkt. 1 at 8; *see also id.* at 10 ¶ 1, 11; Dkt. 18 at 5 (Beasley citing those allegations). She also complained that she felt "uneasy" about the business's "communicative practice" after a run-in with a previous manager, Sandra Lopez, and that the business failed to address her complaints about negative interactions with another employee, Leza Narducci. *See id.* at 11 ¶¶ 2, 3.

But Harden and 13 Strikes correctly assert that, to qualify as "protected activity," a complaint must concern conduct *prohibited by the statute*, which is limited to racial discrimination. *See Yarborough*, 152 F.4th at 667 (a complaint qualifies as protected activity if it "oppos[es] race discrimination"); Dkt. 14 at 13-14. Yet nothing in the pleading indicates that she complained to anyone within 13 Strikes that she was being denied pay, confronted with communication issues, or had problems with other employees *because of her race*. *See, e.g.*, *Yarborough*, 152 F.4th at 667 (affirming rejection of retaliation claim where conversations that allegedly constituted protected activity "did not mention race"). Moreover, "no reasonable plaintiff could believe that" certain "complained-of conduct"—like workplace conflicts with Narducci or other employees—were race-based. *See id.* at 667-68 (rejecting assertion of protected

activity based on employee's complaints about supervisor's conduct that had nothing to do with race). The retaliation claim should be dismissed.

3. Allegations about a "representation agreement" fail to state a basis for relief.

Another of Beasley's claims asserts that Defendants breached a "representation agreement" by "isolat[ing]" her, "reallocating" her job responsibilities to Narducci, and requiring her "to perform activities outside her job description." *See* Dkt. 1 at 12. Harden and 13 Strikes are correct that this is not a standalone basis for relief under Section 1981. *See* Dkt. 14 at 10. And under Section 1981's general framework prohibiting racial discrimination that impairs the performance or conditions of a contract, *see* 42 U.S.C. § 1981(b), Harden and 13 Strikes are also correct that Beasley has not stated a basis for relief. *See* Dkt. 14 at 15.

First, this claim falters because nowhere does Beasley identify a binding, enforceable contract. "Any claim brought under § 1981 ... must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 470 (2006). Beasley's contention that "Defendants" did not adhere to the parameters of her job description fails to indicate anyone was legally obligated to stay within those parameters or that Beasley was legally entitled to enforce them. That omission conclusively defeats her claim. *See, e.g.*, *Perry v. VHS San Antonio Partners,*

*L.L.C.*, 990 F.3d 918, 931 (5th Cir. 2021) (noting that a complaint that failed to identify "an impaired contractual relationship" with defendant "under which [the plaintiff] had rights" meant that plaintiff "failed to state a plausible § 1981 claim") (alterations and quotation omitted).

Second, Beasley also cannot recover because she pleaded no facts plausibly indicating that anyone took the complained-of actions because of her race. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 388 (1982) (explaining that Section 1981 violation occurs if an offeror refuses to extend to an African American "*solely because he is*" African American, "the same opportunity to enter into contracts as he extends to white offerees"). Beasley merely relies on her own race and her labeling of the conduct as "discriminatory." *See* Dkt. 18 at 5-6. That falls well short of stating a plausible Section 1981 contracting claim. This claim should be dismissed.

4. No actionable hostile work environment claim has been pleaded.

Harden and 13 Strikes also challenge the hostile work environment claim. Dkt. 14 at 10-13. They contend that none of the various slights or disputes described in the complaint are linked to Beasley's race. *See id.* Although Beasley responds by globally referencing her allegations, *see* Dkt. 18 at 6-9, none of those allegations are actionable as a hostile work environment.

"A racial hostile work environment plaintiff must show that [s]he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her] [race]; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Yarbrough*, 152 F.4th at 664-65 (quotation omitted). Critically here, the analysis above underscores that the complaint lacks plausible allegations supporting the third element, i.e., that Beasley's various workplace issues were based on her race.

For instance, Beasley cites her allegations of wage discrimination. *See* Dkt. 18 at 6. But as already concluded, the complaint does not plausibly indicate that her wages, reimbursements, or any other remuneration differed from anyone similarly situated to her, which defeats the claim that any pay disparities were due to her race. *See supra* Part III.B.1.

Beasley also touts assertions that managers did not respond to her queries, mishandled issues between Beasley and other employees, and placed her on a performance improvement plan that did not align with a supposed "representation agreement." *See* Dkt. 18 at 7-9. Those allegations likewise lack any plausible connection to her race. *See* Dkt. 1 at 11 ¶ 2 (complaining of being "uneasy" about how company handled dispute with Sandra Lopez); *id.* at 11-12 ¶¶ 3, 4 (complaining that the company "supported harassment and

retaliation" by Narducci who had contacted Beasley "unnecessarily," falsely claimed that employees had worked at Beasley's event and not been paid, and demanded documents from Beasley); *id.* at 12 ¶ 5 (requirements in performance improvement plan were inconsistent with a "representation agreement"); *see also supra* Part III.B.3 (no facts linking changes in job parameters to race). Merely complaining that an employer or other employees made improper work requests or behaved badly does not constitute actionable race-based harassment absent specific facts linking that conduct to the plaintiff's race. *See Yarbrough*, 152 F.4th at 665 (managers' condescending or bullying conduct and request that a black employee clean the kitchen did not constitute actionable harassment); *Goins v. Clear Creek Indep. Sch. Dist.*, 2024 WL 5238663, at *7 (S.D. Tex. Dec. 26, 2024) (allegations that supervisors made false accusations against plaintiff, requested that others scrutinize and track her conduct, and changed or eliminated positive feedback about her work, were insufficient because the plaintiff "pleads no facts indicating a relationship between her race and the alleged harassment").

The only race-tangential allegations describe how the restaurant was "gentrifying" itself by shifting away from southern and African-inspired food toward "American-Japanese cuisine." Dkt. 1 at 7. The complaint also alludes to changes in hiring practices, wherein the "executive team requested 'white promoters' ...." *See id.* at 9 ¶ 12g. Conspicuously lacking, however, are factual

allegations tying those alleged changes to the *specific conduct* about which Beasley complains. Merely stating that the conduct was racially motivated and labeling it as racially discriminatory is not enough. *See, e.g.*, *Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, (W.D. Tex. 2025) ("A plaintiff's subjective beliefs and conclusory allegations are insufficient to establish discrimination."). Yet that is all that Beasley does in her complaint. She has not pleaded a viable Section 1981 hostile work environment claim.

**C. The same flaws merit dismissing all claims against Thirteens Hospitality.**

As noted in the procedural history, Beasley also asserted claims against Thirteens Hospitality, which has not appeared. The record reflects that no such entity exists. Although Beasley asserts that Thirteens Hospitality should be treated as one-and-the-same as Harden, *see* Dkt. 42 at 2, her position only underscores that the same deficiencies detailed above merit dismissing all claims against Thirteens Hospitality, even assuming that it can be sued.

A district court can dismiss claims on its own motion "as long as the procedure employed is fair." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (quotation omitted). That generally means a court must first provide notice of its intent to dismiss and an opportunity to respond. *See id.* But that extra step is unnecessary when dismissal would not be prejudicial because the plaintiff's allegations against both defendants are identical, and the reasons

for dismissing claims against a moving defendant apply equally to a non-moving defendant. *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010) (affirming *sua sponte* dismissal of claims against non-movants because identical allegations against other defendants were properly dismissed).

By lodging her allegations against "Defendants" collectively, Beasley did not differentiate between Harden, 13 Strikes and Thirteens Hospitality. Thus, she has not adequately pleaded her claims against any defendant. To avoid an incongruous result, Beasley's claims against Thirteens Hospitality should be dismissed. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2011) (noting "it would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants").

## IV. <u>Beasley has not shown good cause warranting leave to amend.</u>

In two filings related to her motions for default judgment, Beasley embedded a generalized request for leave to amend. Dkt. 43 (motion to withdraw request for default judgment against Harden but raising request for leave to amend); Dkt. 44 (notice withdrawing request to withdraw motion for default judgment but leaving intact the motion for leave to amend); Dkt. 45 (notice withdrawing request for default judgment against Thirteens Hospitality but requesting leave to amend). Harden and 13 Strikes oppose leave to amend, both because Beasley has not explained what her amended

pleading would say and because she has not shown good cause for amendment. Dkt. 46 at 6-7. The Court concludes that leave to amend is unwarranted.

Beasley invokes Rule 15(a)(2), Dkt. 43 at 2; Dkt. 45 at 2, under which leave to amend shall be freely given "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). But Beasley sought leave to amend long after the deadline for amending pleadings had expired. *Compare* Dkt. 24 at 1 (April 20, 2026 deadline), *with* Dkt. 43 (Beasley's request, filed July 23, 2026). "Rule 16(b) provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.'" *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (quoting Fed. R. Civ. P. 16(b)).

The good cause standard "requires a party 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Id.* (quoting *S&W Enters., LLC v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003)). Four factors inform whether good cause exists: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S&W Enters.*, 315 F.3d at 536). Only upon showing good cause does Rule 15(a)'s more liberal standard for amendments apply. *See id.*

Beasley has not acknowledged the good cause standard, much less explained how good cause exists. She offers no justification for waiting so long to seek leave to amend. As Harden and 13 Strikes note, Dkt. 46 at 4, that omission justifies denying her request. *See E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (affirming conclusion that a party's "failure to account for its delay was dispositive, outweighing the other three factors for assessing good cause").

Nor does Beasley explain what additional allegations she would raise, nor how they could overcome the many pleading deficiencies cited by Harden and 13 Strikes meriting dismissal. That shortcoming, by itself, can foreclose leave to amend. *See, e.g.*, *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave when plaintiffs did not "furnish" a proposed amended pleading and "failed to alert both the court and defendants to the substance of their proposed amendment"). In terms of the good cause factors, Beasley's lack of explanation also leaves no indication that the amendment would be important or that prohibiting it would prejudice her. And even if she had made that showing, this Court would still be disinclined to grant a continuance, given that this is the second case involving the same core employment dispute, and the first case went all the way through discovery before a final take-nothing judgment was entered for defendants.

In sum, Beasley has not shown good cause for allowing her leave to amend at this late juncture. Her barebones request for leave to amend (Dkt. 43 at 2; Dkt. 45 at 2) is denied. Beasley's separate motion to stay (Dkt. 37) her Rule 26(a) disclosure obligations is denied.

## Recommendation and Order

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff Brittani Beasley's motion for default judgment (Dkt. 15) against Defendant James Harden Jr., and her motion for leave to amend (Dkt. 39) that motion against Harden both be **DENIED**.

It is further **RECOMMENDED** that Beasley's motion for default judgment (Dkts. 28, 31) against Defendant Thirteens Hospitality Group LLC be **DENIED AS MOOT**.

It is further **RECOMMENDED** that Defendants James Harden Jr.'s and 13 Strikes LLC's Rule 12(b)(6) motion to dismiss (Dkt. 14) be **GRANTED**, that Beasley's request for leave to amend (Dkt. 43 at 2; Dkt. 45 at 2) her complaint be **DENIED**, and that Beasley's claims against all defendants—including Thirteens Hospitality Group LLC—be **DISMISSED WITH PREJUDICE**.

It is **ORDERED** that Beasley's request for a hearing (Dkts. 29, 36) on the default judgment against Thirteens Hospitality and for leave to amend that motion (Dkt. 38) be **DENIED AS MOOT**, that her parallel request for a

hearing (Dkts. 30, 35) on her motion for default judgment against Harden be **DENIED**, and her motion for leave to amend (Dkt. 39) the default-judgment motion against Harden be **DENIED**.

It is further **ORDERED** that Beasley's motion to consolidate (Dkt. 20) this case with *Beasley I* be **DENIED AS MOOT**, and her motion to stay Rule 26 obligations (Dkt. 37) be **DENIED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 14, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge